1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9  LUIS SAMANO,

Case No.  1:21-cv-01692-SKO

10          Plaintiff,

ORDER VACATING HEARING AND
GRANTING IN PART DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS

11      v.

12  LVNV FUNDING, LLC,

(Doc. 16)

13          Defendant.

14  _____/

15
16
17

## I.    INTRODUCTION

18      The matter before the Court is Defendant LVNV Funding, LLC's Motion for Judgment on

19  the Pleadings (the "Motion").[1]  (Doc. 16.)  On April 4, 2022, Plaintiff Luis Samano filed his

20  opposition (Doc. 19).  No reply brief was filed.

21      The Court has reviewed the parties' papers and finds the matter suitable for decision without

22  oral argument.  The hearing set for April 27, 2022, will therefore be vacated.

23      Having considered the briefing, and for the reasons set forth below, Defendant's Motion will

24  be granted in part, with leave to amend some of the allegations.

25

## II.    BACKGROUND

26      This case concerns a consumer debt collector that Plaintiff alleges transmitted false

27  information about him to credit reporting agencies.  On or about July 28, 2021, Plaintiff sent

28
_____
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 11.)

Defendant, an acquirer and collector of defaulted consumer debts, a letter indicating that he was no longer disputing his accounts and asked Defendant to report them as such to various credit reporting agencies.  (Doc. 1 ¶¶ 22–23.)  Plaintiff received confirmation from the U.S. Postal Service that Defendant had received his letter on or about August 9, 2021.  (*Id*. ¶ 24.)

On or about September 9, 2021, after having received Plaintiff's letter, Defendant reported to Transunion and to Equifax, on two occasions each, that Plaintiff disputed his accounts.  (Doc. 1 ¶ 25.)  On information and belief, Defendant has continued from that time up through the present to report these accounts as disputed by Plaintiff to at least two credit reporting agencies twice per month.  (*Id*. ¶ 26.)

Plaintiff filed his complaint for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*., the Rosenthal Fair Debt Collections Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 *et. seq*., and the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code §§ 1785 et seq., on November 24, 2021.  (Doc. 1.)  On March 21, 2022, Defendant filed the present Motion seeking dismissal of Plaintiff's claims under Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure, contending that Plaintiff has not alleged a concrete injury sufficient to establish standing and fails to state claims under the FDCPA, Rosenthal Act, and CCRAA.  (Doc. 16.)

### III.    LEGAL STANDARDS

#### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction, including claims for which a plaintiff lacks standing.  *See Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1121 (9th Cir. 2010).  Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways—a "facial" or "factual" challenge.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A "facial" challenge accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction."  *Id*.  The district court resolves a facial challenge as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations

as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). A "factual" challenge "'relie[s] on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on the basis of the pleadings.'" *Safe Air*, 373 F.3d at 1039 (quoting *Morrison v. Amway Corp*., 323 F.3d 920, 924 n.5 (11th Cir. 2003)). "[T]he district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. Regardless of the type of motion asserted under Rule 12(b)(1), the plaintiff always bears the burden of showing that federal jurisdiction is proper. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

**B.    Rule 12(c)**

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The issue presented by a Rule 12(c) motion is substantially the same as that posed in a 12(b) motion—whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief." *Torres v. Carescope, LLC*, No. 2:15-cv-00198-TLN-CKD, 2020 WL 6939032, at *1 (E.D. Cal. Nov. 25, 2020) (citing *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

In analyzing a Rule 12(c) motion, the district court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010). "[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend and to simply grant dismissal of the action instead of entry of judgment." *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004).

### IV.   DISCUSSION

**A.      Standing**

Defendant mounts a facial challenge to Plaintiff's standing, contending he "has not, and cannot, allege any conceivable concrete harm stemming from the reporting of the accounts as undisputed" because "[r]eporting an undisputed debt as disputed—especially one that was previously disputed—is a harmless error akin to misreporting a zip code," which was deemed insufficient to confer standing upon the plaintiff in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016). (Doc. 16 at 14.)  Plaintiff responds that his allegations of emotional distress, loss of personal reputation, and loss of personal time constitute a concrete injury.  (Doc. 19 at 7.)  While there is disagreement as to that issue, Plaintiff asserts facts in a declaration attached to his opposition that would appear indisputably to establish standing if added to the complaint.  (*Id.*)  For this reason, the Court will grant the Motion to allow Plaintiff to allege the facts set forth in his declaration so this case can proceed efficiently.

Article III standing requires the party invoking federal jurisdiction to demonstrate that (1) the plaintiff has suffered an injury-in-fact, (2) the injury was caused by the defendant, and (3) the injury is redressable by judicial relief.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130 (1992).  An injury-in-fact must be concrete, particularized, and actual or imminent.  *Id.* A concrete injury is essential to standing: "No concrete harm, no standing."  *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

To be concrete, an injury must be "'real,' and not 'abstract,'" but concrete need not mean tangible.  *Spokeo*, 578 U.S. at 340–41.  Traditional tangible harms, such as physical or monetary harm, easily meet the concreteness requirement.  *TransUnion*, 141 S. Ct. at 2204.  Intangible harms can be more difficult to assess.  Intangible harms are concrete if the plaintiff's alleged injury bears a "close relationship" to the sort of harms traditionally recognized by American courts, such as reputational harm.  *Spokeo*, 578 U.S. at 341.  The close-relationship inquiry looks for "a close historical or common-law analogue" to the alleged injury but does not require an "exact duplicate." *TransUnion*, 141 S. Ct. at 2204.

The Ninth Circuit has not yet considered whether Plaintiff's allegations of intangible harm—emotional distress, loss of personal reputation, and loss of personal time—without more, suffice as concrete injury-in-fact for standing purposes in a FDCPA case in view of *TransUnion*.  A recent, pre-*TransUnion* case suggests that they may not.  *See Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 545–47 (9th Cir. 2020) (stating that the doctrine of informational injury does not apply to FDCPA violations, and ultimately finding that the plaintiff had not alleged actual harm or a material risk of harm to the interests protected by the FDPCA, noting that "[w]ithout more, confusion does not constitute an actual harm to [appellant's] concrete interest.").  *See also Lenzini v. DCM Serrvices* [sic], *LLC*, No. 4:20-CV-07612-YGR, 2021 WL 2139433, at *4 (N.D. Cal. May 26, 2021) (granting motion to dismiss for lack of standing under the FDCPA where the plaintiff's allegations did not explain reliance or demonstrate any risk of actual confusion resulting from the debt collection letter).  *But see Uvaldo v. Germaine L. Off. PLC*, No. CV-20-00680-PHX-JJT, 2022 WL 194536, at *4 (D. Ariz. Jan. 21, 2022) ("Because Defendant's statements [regarding accrual of attorney's fees] could genuinely mislead, they threaten Plaintiff's substantive rights thus posing actual harm or a material risk of harm to the Plaintiff.  Since Plaintiff states she received and read the letter, she has alleged a concrete and particularized harm sufficient to confer Article III standing."); *Murphy v. Automated Accts., Inc.*, No. 2:20-CV-00030-SMJ, 2021 WL 2188673, at *3 (E.D. Wash. May 28, 2021) (finding a concrete injury-in-fact where the plaintiff alleged emotional distress caused by debt collector's false statement that it reported her debt to consumer reporting agencies ).  *Accord Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1153–54 (7th Cir. 2022) (finding standing where a debt collector failed to notify a credit-reporting agency that the plaintiffs had disputed the debts in question, and reasoning that the incomplete reporting worked a reputational harm analogous to that associated with common-law defamation); *Morton v. O'Brien*, No. 2:18-CV-445, 2022 WL 969554, at *3 (S.D. Ohio Mar. 31, 2022) (holding that FDCPA plaintiff's emotional distress was "well within the type recognized by courts as sufficiently concrete to satisfy the standing requirement.") (collecting cases).

The Court need not resolve the issue, however, as Plaintiff has asserted facts in his declaration that he was "unable to get a mortgage loan" to purchase a home because Defendant

continued to report his debts as disputed after he informed Defendant he no longer disputed them. (*See* Doc. 19-1.)  These allegations of tangible, monetary harm are sufficient to confer standing here. *See TransUnion*, 141 S. Ct. at 2204.  *See also Lewis v. Experian Info. Sols., Inc*., No. 518CV00252RGKSHK, 2018 WL 1989449, at *2 (C.D. Cal. Mar. 20, 2018) (allegation that debt collector reported a debt she did not owe and that the reported debt prevented her from qualifying for a loan was a "concrete, particularized, and actual injur[y] fairly traceable to Defendants' reporting of the challenged debt.").  Because these allegations appear to render Defendant's challenge to Plaintiff's standing moot, the prudent course is to permit Plaintiff to amend to add those allegations to his complaint.  *See Castillo v. Convergent Outsourcing, Inc*., No. 3:17-CV-00919-WHO, 2017 WL 2902844, at *3 (N.D. Cal. July 7, 2017) (dismissing FDCPA complaint with leave to amend where plaintiff's opposition to motion to dismiss asserted facts that his "credit score lowered when [debt collector] failed to properly note the disputed nature of the debt when reporting it to the credit reporting agencies.").  Accordingly, Plaintiff's complaint will be dismissed with leave to amend.

**B.      Plaintiff's FDCPA, Rosenthal Act, and CCRAA Claims**

Defendant contends that Plaintiff's factual allegations are not sufficient to support claimed violations of the FDCPA, Rosenthal Act, and the CCRAA.  Plaintiff does not oppose the requested dismissal of the Rosenthal Act and CCRAA claims, and withdraws them.  (*See* Doc. 19 at 2, 13.) Therefore, the Motion is granted as to those claims, and only the FDCPA claim is addressed on the merits.

The purposes of the FDCPA are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692.  It is also designed "to provide information that helps consumers to choose intelligently" in dealing with their debts.  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir.2010) (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009)).  If a violation occurs, "the FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional."  *Id*. at 1030.

1    Plaintiff alleges Defendant violated 15 U.S.C. § 1692e when it "willfully communicated
2 credit information which was known or which should have been known to be false, to wit: that
3 Plaintiffs accounts were disputed when, in fact, they were not." (Doc. 1 ¶ 31.). Title 15 U.S.C. §
4 1692e prohibits debt collectors from "using false, deceptive, and misleading representation or means
5 in connection with the collection of a debt," and Plaintiff's allegation tracks the language of §
6 1692e(8), which provides that a debt collector violates the FDCPA by "[c]ommunicating or
7 threatening to communicate to any person credit information which is known or which should be
8 known to be false."[2]  In response, Defendant contends that Plaintiff fails to allege that Defendant
9 made a misrepresentation "in connection with the collection of his debt," and that Plaintiff has
10 alleged no "material" violation of the FDCPA.[3]  (Doc. 16 at 15–17.)

11    **1.    Connection with Debt Collection**

12    Defendant first contends that the reporting of the debt to the credit reporting agencies as
13 "disputed" was not made in connection with the collection of the debt because the recipient of the
14 communication was not the debtor himself, but rather, the credit reporting agencies.  (Doc. 16 at 15,
15 16.)  However, § 1692e does not require that the alleged communication be made to the debtor in
16 order to be actionable.  *See McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 913 (8th Cir. 2014)
17 ("[L]iability under § 1692e is not confined to statements by collectors to consumers.").  In fact, the
18 statute imposes liability on a debt collector who communicates false credit information to "***any***
19 ***person***," including credit reporting agencies.  *See* 15 U.S.C. § 1692e(8); *Bourgeois v. Ocwen Loan*
20 *Servicing*, LLC, No. 15CV1655-GPC(BLM), 2016 WL 245526, at *11 (S.D. Cal. Jan. 21, 2016)
21 ("Under the FDCPA, an allegation that a debt collector provided false credit reporting to the credit
22 reporting agencies can violate § 1692e(8)."); *Quigley v. Verizon Wireless*, No. C-11-6212 EMC,
23 2012 WL 1945784, at *6 (N.D. Cal. May 30, 2012) (claim that debt collector failed to report to the
24 credit reporting agencies that the debtor disputed the debt was viable).

25    Defendant's second, and last, argument with respect to debt collection is that Plaintiff's
26 claim does not concern debt collection activity because it is "based on [] credit reporting

27 _____
[2] Plaintiff clarifies in its opposition that he is alleging a violation of paragraph (8) of § 1692e.
28 [3] To bring a valid FDCPA claim, the defendant must be a "debt collector" and the plaintiff must be a "consumer"
pursuant to 15 U.S.C. § 1692a.  It is undisputed that the parties meet this criteria.

1    allegations," and therefore fails as a matter of law, like in *Martin v. Litton Loan Servicing LP*, No.

2    2:12-cv-970-MCE-EFB PS, 2016 WL 4943832 (E.D. Cal. Sept. 15, 2016).  (Doc. 16 at 16.)  *Martin,*

3    however, is inapposite.  In *Martin*, the plaintiff alleged that the debt collector "did not provide her

4    with an opportunity to rebut incorrect credit reports or take action after being advised about disputed

5    information."  *Id*. at *7.  The court held, based on those allegations, that the plaintiff's claim was

6    not viable because "[t]he FDCPA does not contain any provision requiring a debt collector to

7    provide a debtor with an opportunity to correct false information submitted to a credit reporting

8    agency, or take any corrective action when faced with such a situation."  *Id*. at *8.

9         Here, Plaintiff does not allege that Defendant deprived him of an opportunity to correct the

10   false information provided to the credit reporting agencies, but rather that Defendant provided false

11   information to those agencies in the first place.  While there appears no affirmative duty by a debt

12   collector to report a debt to the credit reporting agencies as disputed (or no longer disputed), *see*

13   *Kozlowski v. Bank of Am., N.A*., No. 1:18-cv-00131-DAD-EPG, 2018 WL 5099765, at *5 (E.D. Cal.

14   Oct. 18, 2018), if the debt collector "elects to communicate 'credit information' about a consumer,"

15   its communication must not be false, deceptive, or misleading, *id*. (quoting *Wilhelm v. Credico, Inc.,*

16   519 F.3d 416, 418 (8th Cir. 2008)).  *Accord Irvine v. I.C. Sys., Inc*., 176 F. Supp. 3d 1054, 1064 (D.

17   Colo. 2016) (finding summary judgment for plaintiff on her § 1692e(8) claim appropriate where she

18   alleged that defendant communicated the debt on plaintiff's account to CRAs, "but failed to

19   communicate the material piece of information that the balance was disputed").  Consistent with the

20   foregoing, Plaintiff alleges that Defendant violated the FDCPA by communicating false credit

21   reporting information to the credit reporting agencies by continuing to report his accounts as

22   disputed even though he had withdrawn his dispute.  *See Bourgeois,* 2016 WL 245526, at *11

23   (finding the plaintiff stated a claim for violation §1692e(8) where he alleged that the debt collector

24   "provided false credit reporting by either removing the dispute status and/or failing to report the

25   debt as disputed even though he had disputed the debt.")

26        Even though it has rejected Defendant's arguments, the Court is still left with the question

27   of whether Plaintiff has sufficiently alleged that Defendant's communications to the credit reporting

28   agencies were made "in connection with the collection of any debt."  The Court concludes that he

1    has not.

2           While neither the FDCPA nor the Ninth Circuit have defined the phrase, "in connection with

3    the collection of any debt," a generally accepted definition derived from other Circuit Courts of

4    Appeals is that "for communication to be in connection with the collection of a debt, an animating

5    purpose of the communication must be to induce payment by the debtor." *Carter v. Richland*

6    *Holdings, Inc*., No. 2:16-cv-02967-RFB-VCF, 2019 WL 4773806, at *4 (D. Nev. Sept. 30, 2019)

7    (citing *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)); *see also McIvor*,

8    773 F.3d at 914; *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385–86 (7th Cir. 2010).

9           Here, Plaintiff does not allege any "animating purpose" for the communications at issue and

10   pleads no facts from which a collection-related motivation could be inferred.  Instead, Plaintiff

11   suggests that ***any*** reporting of a debt to a credit reporting agency constitutes activity in connection

12   with the collection of a debt.  (*See* Doc. 19 at 8–9.)   At least one Circuit Court of Appeals has

13   rejected that argument.  *See McIvor*, 773 F.3d at 915 (holding that every communication between a

14   debt collector and a credit reporting agency does not necessarily constitute collection activity).  The

15   Court agrees, and finds that Plaintiff has not plausibly alleged that Defendant's communications to

16   the credit reporting agencies were made "in connection with the collection of any debt."  Therefore,

17   the Motion will be granted as to that ground.

18          The Court disagrees with Defendant, however, that Plaintiff's FDCPA claim should be

19   dismissed with prejudice, and finds it appropriate to grant Plaintiff leave to amend to cure the

20   deficiencies addressed in this order.  *See Katzakian v. Collectibles Mgmt. Res*., No. CV F 12-1677

21   LJO SKO, 2013 WL 57712, at *6 (E.D. Cal. Jan. 4, 2013) (leave to amend § 1692e(8) claim

22   granted).  *See also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so

23   requires.");  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir.

24   2011). ("[W]hen a viable case may be pled, a district court should freely grant leave to amend.").

25   *Cf. Narog v. Certegy Check Servs., Inc.*, 759 F. Supp. 2d 1189, 1192 (N.D. Cal. 2011) ("Dismissal

26   of a . . . complaint without leave to amend is proper ***only if it is absolutely clear that the deficiencies***

27   ***of the complaint could not be cured by amendment***.") (internal quotations and citation omitted)

28   (emphasis added).

1          **2.      Materiality**

2          Defendant's final challenge to Plaintiff's FDCPA allegations is that there is no "material"

3  violation of § 1692e alleged.  (*See* Doc. 16 at 17.)  Under § 1692e(8), a debt collector cannot

4  "communicat[e] . . . to any person credit information which is known or which should be known to

5  be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. §

6  1692e(8).  A communication is material if it contributes to or undermines the FDCPA's objective

7  of "provid[ing] information that helps consumers to choose intelligently."  *Donohue*, 592 F.3d at

8  1033.  "If the least sophisticated debtor would 'likely be misled' by a communication from a debt

9  collector, the debt collector has violated the Act."  *Guerrero v. RJM Acquisitions LLC*, 499 F.3d

10  926, 934 (9th Cir. 2007) (citing *Swanson v. S. Oregon Credit Serv., Inc*., 869 F.2d 1222, 1225 (9th

11  Cir. 1989)).  When "assessing FDCPA liability, [courts] are not concerned with mere technical

12  falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate

13  a consumer's ability to intelligently choose his or her response."  *Donohue*, 592 F.3d at 1034.

14          Defendant asserts that "there is nothing in the reporting of Plaintiff's debt as 'disputed' that

15  would 'frustrate' his ability to respond to the debt, or otherwise deceive him in any way."  (Doc. 16

16  at 17.)  Defendant's repeated focus on Plaintiff misses the mark.  Although the Ninth Circuit has not

17  addressed the issue, other circuits have held that the communication need not be directed at the

18  debtor in order to be actionable because the FDCPA "do[es] not designate any class of persons . . .

19  who can be abused, misled, etc., by debt collectors with impunity."  *Daley v. A & S Collection*

20  *Assocs., Inc*., 717 F. Supp. 2d 1150, 1154 (D. Or. 2010) (quoting *Evory v. RJM Acquisitions Funding*

21  *LLC*, 505 F.3d 769, 773 (7th Cir. 2007)).  *See also McIvor*, 773 F.3d at 913 ("[L]iability under §

22  1692e is not confined to statements by collectors to consumers."); *Escobar v. Midland Credit Mgmt*.,

23  No. 3:18-CV-819 (MPS), 2019 WL 3751486, at *5 (D. Conn. Aug. 8, 2019) (A "communication"

24  under the FDCPA " does not require that the conveying of information be to or from the person who

25  incurred the debt.").

26          Pursuant to § 1692e(8), if a debt collector knows or should know that a given debt is

27  disputed, the debt collector must disclose the debt's disputed status to persons inquiring about a

28  consumer's credit history.  *See Katzakian*, 2013 WL 57712, at *5 (E.D. Cal. Jan. 4, 2013) ("[I]f a

debt collector elects to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt.") (quoting *Wilhelm*, 519 F.3d at 418). "[T]he failure to report the disputed status of an account to credit reporting agencies was material, because 'the failure to inform a credit reporting agency that the debtor disputed his or her debt will *always* have influence on the debtor, as this information will be used to determine the debtor's credit score.'" *Patterson v. Peterson Enterprises, Inc*., No. 2:18-CV-161-RMP, 2018 WL 5269810, at *3 (E.D. Wash. Oct. 23, 2018) (quoting *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346–48 (7th Cir. 2018) (abrogated on different grounds) (emphasis in original). Thus, under the FDPCA, after Plaintiff's initial dispute of his accounts, Defendant would be subject to liability had it reported the debt to credit reporting agencies without indicating that the accounts had been disputed. *See Patterson,* 2018 WL 5269810, at *3.

But here, Plaintiff seeks to hold Defendant liable for reporting that his accounts remained in dispute even after receiving notice from him that Defendant no longer disputed them. (Doc. 1 ¶ 31). Simply put, Plaintiff alleges that Defendant's failure to remove the "account in dispute" notation and continued reporting to the credit reporting agencies after receiving notice that Plaintiff no longer disputed his accounts violated the FDCPA because Defendant communicated information that it knew to be false. Defendant argues that Plaintiff fails to state a claim because § 1692e(8) "does not cover the opposite scenario from the one mentioned in the text of the statute."

The Court finds that, accepting all factual allegations in the complaint as true and construing them in the light most favorable to Plaintiff, *Fleming*, 581 F.3d at 925, Defendant may be held liable for failing to change the accounts status from disputed to undisputed and continuing to report those accounts to the credit reporting agencies as such. Given that whether "the consumer has disputed a particular debt" is "always material" and thus a debt collector must disclose that an account is disputed when it "elects to communicate 'credit information[,]'" the fact that an account is no longer disputed "would also be material." *Green v. Americollect, Inc*., No. 4:20-CV-01096-SRC, 2021 WL 2665937, at *4 (E.D. Mo. June 29, 2021). *See also Evans*, 889 F.3d at 349 ("Whether *or not* a consumer is disputing a debt is no minor matter that could be deemed an immaterial aspect of the debt.") (abrogated on different grounds) (emphasis in original). The misstating of a debt obligation

is no "mere technical falsehood," and, according to Plaintiff, in fact misled his mortgage lender who refused to grant him a loan (*see* Doc. 19-1).  *See Sayles v. Advanced Recovery Sys., Inc*., 206 F. Supp. 3d 1210, 1216 (S.D. Miss. 2016) (The false reporting of a debt on a consumer's credit report "may affect how the Plaintiff's potential application for a loan, housing, or employment is received.")  Finally, while Defendant points out § 1692e(8) singles out "failure communicate that a disputed debt is disputed," this is merely an example of an improper communication under the FDCPA—the use of the term "including" in the statute indicates that § 1692e(8) bars more than just communications that a debt is disputed.  *See* 15 U.S.C. § 1692e(8).

The Court therefore finds that Plaintiff has plausibly alleged that the false representation by Defendant to credit reporting agencies regarding his no-longer-disputed accounts constituted a material misrepresentation.  The Motion will be denied as to that ground.

## V.    CONCLUSION AND ORDER

Based on the foregoing, this Court GRANTS IN PART Defendant's Motion for Judgment on the Pleadings (Doc. 16), dismissing without leave to amend Plaintiff's claims under the Rosenthal Act and the CCRAA, and dismissing Plaintiff's complaint with leave to amend Plaintiff's Article III standing allegations and to allege conduct "in connection with the collection of any debt" pursuant to 15 U.S.C. § 1692e.  The Motion is DENIED in all other respects.  Accordingly, the Court:

1.    VACATES the hearing on the Motion, currently set for April 27, 2022;

2.    DISMISSES Plaintiff's complaint without prejudice and with leave to amend allegations pertaining to standing under Article III;

3.    DISMISSES without prejudice and with leave to amend Plaintiff's claim under the FDCPA, 15 U.S.C. § 1692e(8);

4.    DISMISSES without leave to amend Plaintiff's claims under the Rosenthal Act and the CCRAA; and

5.    ORDERS Plaintiff, by no later than fourteen (14) days of the date of this order, to file and serve either: (a) a first amended complaint in compliance with this order; or (b) a statement that Plaintiff elects not to proceed with this action.

1

IT IS SO ORDERED.

2

Dated:   __**April 18, 2022**__                    ___/s/ *Sheila K. Oberto*___

3

UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28